**Gregory E. O'NEAL and Brenda C. O'Neal, Plaintiffs/Appellants,**

**v.**

**Sharon A. AGEE and Agee Law Firm, Defendants/Respondents.**

### No. ED 75507.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 14, 1999.

Mark T. McCloskey, Clayton, for appellant.

Sharon Agee, St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

Plaintiffs, Gregory and Brenda O'Neal (individually, "husband" and "wife"), sued defendants, Sharon Agee and Agee Law Firm, P.C., for legal malpractice. Plaintiffs appeal from a judgment granting a new trial in favor of defendants and a directed verdict in favor of defendants on wife's underlying loss of consortium claim. We affirm the grant of a new trial but reverse the directed verdict.

In January, 1992, husband was involved in a multiple car accident during morning rush hour traffic on Interstate Highway 55 in the St. Louis metropolitan area. For the sake of simplicity, we will consider husband to be driver # 1 and will refer to the drivers of the vehicles that immediately followed as drivers # 2 though # 5. As traffic ahead of him came to an abrupt halt, husband applied his brakes and was able to bring his vehicle to a complete stop without striking the vehicle ahead of him. Driver # 2 did the same. Driver # 3 was unable to stop and collided with driver # 2, causing driver # 2's vehicle to move forward but not into contact with husband's vehicle. What happened next is subject to dispute. According to driver # 4, he brought his vehicle to a complete stop without colliding into driver # 3. Driver # 5 then collided into him, causing him to collide with driver # 3. According to driver # 5, on the other hand, driver # 4 collided with driver # 3 prior to being hit by driver # 5. Nevertheless, it is undisputed that driver # 4's collision with driver # 3, whether before or after driver # 5's collision with driver # 4, caused driver # 2's vehicle to collide with husband's (driver # 1).

As a result of the collision, husband suffered a herniated cervical disc in his neck and nerve damage in his left elbow. He underwent separate surgical procedures to repair each injury. His medical bills exceeded $21,000. Despite these surgeries, he continued to experience pain in both his neck and left arm and has been unable to resume some of the activities in which he participated prior to the accident, such as softball and skiing.

Plaintiffs retained the legal services of Sharon Agee to represent them in a lawsuit against the liable parties.[1] Husband sued for negligence; wife sued for loss of consortium. Plaintiffs originally named only driver # 5 as a defendant but eventually joined drivers # 2, # 3, and # 4 as more facts became available. Ms. Agee, acting with authority, settled the case against drivers # 3 and # 5 for $25,000 each. Pursuant to the settlement, plaintiffs were to execute releases whereby they would waive all claims that may arise out of the accident against drivers # 3 and # 5. The releases that were actually signed by plaintiffs were "general" or "global" releases which released not only the settling parties, but all other parties as well, both actual and potential.

Meanwhile, Ms. Agee discussed with the attorneys for drivers # 2 and # 4 the possibility of a "nuisance settlement" for a total of $5,000. Ms. Agee claims these drivers made an offer to that effect that she rejected at plaintiffs' behest. Nevertheless, drivers # 2 and # 4 claimed plaintiffs, through Ms. Agee, had agreed to settle for that amount and filed a motion to enforce settlement. While that motion was pending, those drivers became aware of the general release previously executed by plaintiffs and immediately filed a motion for summary judgment. That motion was granted by the trial court and affirmed on appeal; application for transfer to the Missouri Supreme Court was denied. *See O'Neal v. Swyers,* 895 S.W.2d 137 (Mo.App.1995).

Plaintiffs subsequently filed a legal malpractice action against defendants claiming Ms. Agee was negligent in having

---

1. Sharon Agee was employed by the law firm of Carr, Korein, and Tillery et al. when she was hired by plaintiffs. She left that firm shortly thereafter and opened Agee Law Firm, P.C. but continued to represent plaintiffs.

them execute general releases, which had the legal effect of releasing drivers # 2 and # 4, without plaintiffs' informed consent. Ms. Agee contends she had obtained plaintiffs' informed consent but plaintiffs subsequently changed their mind.[2] At the close of plaintiffs' evidence, the trial court granted defendants' motion for directed verdict on wife's underlying claim of loss of consortium.[3] Following the conclusion of all evidence, a jury rendered a verdict in favor of plaintiffs in the amount of $200,000.[4] Defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the motion for new trial; plaintiffs appealed.

■ Plaintiffs first argue the trial court erroneously ordered a new trial. The trial court advanced five separate grounds in support of its order, each of which plaintiffs challenge on appeal. If any of these grounds is correct, this court will affirm that order. *Bast v. St. Louis Freightliner, Inc.*, 676 S.W.2d 42, 43 (Mo.App.1984).

■ The first ground advanced by the trial court was that the verdict was against the weight of the evidence. A trial court has discretion to grant one new trial on this ground and that ruling will be reversed only in the event of a manifest abuse of discretion. Rule 78.02; *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 359 (Mo.App.1993). The trial court's broad discretion in this regard results from its inherent superiority, vis-a-vis the appellate courts, in weighing the evidence adduced at trial. *Carpenter*, 853 S.W.2d at 359. Where a defendant is granted a new trial on this ground, that discretion becomes virtually unfettered. Unlike a plaintiff, a defendant is not required to present evidence for the trier of fact to weigh. *Id.* Thus, when a new trial is granted to a defendant because the verdict was against the weight of the evidence, this court need not determine whether that defendant presented substantial evidence to support a verdict in its favor as we would were the new trial granted to the plaintiff. *Id.* As a result, the trial court may employ its authority under Rule 78.02 in favor of a defendant "with virtual certainty that the ruling is immune from appellate interference." *Carpenter*, 853 S.W.2d at 359. We therefore hold the trial court properly exercised its discretion in granting defendants a new trial on the ground the verdict was against the weight of the evidence. This determination precludes any need to address plaintiffs' remaining attacks on the propriety of the order of a new trial.

■ Plaintiffs' final point relied on contends the trial court erred in directing a verdict in favor of defendants on wife's loss of consortium claim. In reviewing a directed verdict in favor of a defendant, this court views the evidence and reasonable inferences therefrom in a light most favorable to the plaintiff, disregards contrary evidence and inferences, and determines whether the plaintiff made a sub-

---

**2.** Specifically, Ms. Agee claims she and plaintiffs had agreed that drivers # 2 and # 4 had no liability and would eventually be dismissed from the lawsuit. She additionally claims husband had given her broad authority to handle the case, which she contends included releasing drivers # 2 and # 4 from the suit.

**3.** To prevail in a legal malpractice action, a plaintiff must plead and prove: (1) an attorney-client relationship existed; (2) the attorney acted negligently or in breach of contract; (3) such acts were the proximate cause of the plaintiff's damages; and (4) *but for the attorney's conduct, the plaintiff would have been successful in the prosecution of the underlying claim.* *McDowell v. Waldron*, 920 S.W.2d

555, 559 (Mo.App.1996) (emphasis added). The directed verdict foreclosed the establishment of the fourth element of wife's legal malpractice claim.

**4.** The jury actually rendered two verdicts: one against driver # 4 on husband's negligence claim and one against defendants on his legal malpractice claim. Prior to trial, the parties agreed the maximum damages that could have been recovered in the underlying case was $100,000, the amount of driver # 4's insurance policy, and the trial court would not enter damages against defendants in excess of that amount.

missible case. *Derrick v. Norton,* 983 S.W.2d 529, 531 (Mo.App.1998). When a married person is injured, two causes of action arise: one accrues to the injured person for the injuries suffered directly by him or her, and the other accrues to the injured person's spouse for damages suffered as a result of the loss of the injured person's services, society, companionship, and sexual relations (loss of consortium). *H.R.B. v. J.L.G.,* 913 S.W.2d 92, 99 (Mo. App.1995); *Tunget v. Cook,* 94 S.W.2d 921, 926 (Mo.App.1936). The latter action is derivative only; that is, a spouse cannot recover for loss of consortium if the other spouse has no valid claim for personal injuries. *H.R.B.,* 913 S.W.2d at 99.

At trial, wife testified that for a period of approximately five or six months following the accident, husband could do little more than sit in a chair. More specifically, he was unable to assist her with raising and supervising their children, repairing and maintaining their house, yard, and automobiles, and performing various errands, such as buying groceries. Husband additionally testified the two were unable to engage in sexual intercourse for several months following the accident. Assuming husband's underlying negligence claim is viable, this evidence expressly demonstrates wife's loss of his services and sexual relations. It can also be reasonably inferred from wife's testimony that she suffered a loss of husband's society and companionship as a result of his confinement to a chair. Husband's testimony that his relationship with his wife following the accident was "alright" is to be disregarded at this stage. We therefore conclude that wife made a submissible case of loss of consortium. Accordingly, the trial court erroneously directed a verdict on wife's loss of consortium count.

The judgment granting a new trial is affirmed, and the directed verdict on wife's claim of loss of consortium is reversed and this case is remanded for further proceedings.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.

