**STATE of Missouri, ex rel. CURATORS OF the UNIVERSITY OF MISSOURI and Alan M. Luger, M.D., Relators,**

v.

**Honorable Kelly J. MOORHOUSE, Respondent.**

**No. WD 65644.**

Missouri Court of Appeals, Western District.

Jan. 17, 2006.

Charles Henry Stitt, Kansas City, MO, arguing on behalf of appellant.

D. Bruce Keplinger, Overland Park, KS, arguing on behalf of respondent.

Before JAMES M. SMART, JR., P.J., HAROLD L. LOWENSTEIN, and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Presiding Judge.

The Curators of the University of Missouri, as the operators of a hospital located in Columbia, and their employee, Alan M. Luger, M.D., are relators in this proceeding. Relators, collectively referred to as "the University," seek an order in prohibi-

tion to direct the respondent circuit judge to dismiss the third party claim brought against them in the underlying proceeding in the Jackson County Circuit Court. We issued a preliminary order on July 26, 2005. Having fully considered the matter following briefing and argument, we now make the preliminary order absolute.

## Background Facts

The plaintiffs in the underlying action are Will States and his parents. The defendants are two Kansas City pediatric surgeons and their professional corporation, collectively referred to as "the Physicians." Plaintiffs brought a malpractice action against the Physicians asserting that the Physicians were negligent in their treatment of Will's congenital intestinal disorder, which was previously treated surgically. The Physicians, after being sued, brought a third-party claim against the University alleging that Will's previous surgery at the University was conducted improperly, and, in the event that the Physicians were found liable to the plaintiffs, the Physicians would be entitled to indemnity and/or contribution from the University.

After the third-party claim was asserted by the Physicians, the plaintiffs settled with the University, releasing the University from liability for $625,000 in exchange for a release from the suit. The University then filed a motion for summary judgment with the trial court based upon the release granted by the plaintiffs. A substitute judge filling in for Judge Moorhouse denied the motion on May 9, 2005, and denied a motion to reconsider on June 7, 2005. This court granted a preliminary writ of prohibition on July 26, 2005. On August 17, 2005, the trial court approved a settlement between the plaintiffs and the Physicians in which the Physicians paid $727,500 in exchange for a complete release of all claims by the plaintiffs. The only claim remaining in this matter is the third party claim of the Physicians against the University. The University now argues that this court should issue an order directing the trial court to dismiss the claim against them.

## Writs of Prohibition

An extraordinary writ of prohibition may be granted when it is clear that a trial court is exceeding its jurisdiction. *See State ex rel. Mo. Gaming Comm'n v. Kinder*, 896 S.W.2d 514, 516 (Mo.App. 1995). The primary function of prohibition is to limit judicial activities to those within the bounds of "authority, preventing actions in want or in excess of the court's jurisdiction." *State ex rel. Lopp v. Munton*, 67 S.W.3d 666, 670 (Mo.App.2002). Prohibition is an appropriate remedy where the lower court lacks either personal or subject matter jurisdiction to proceed. *Id.; State ex rel. Havlin v. Jamison*, 971 S.W.2d 938, 939 (Mo.App.1998). "A circuit court lacking subject matter jurisdiction may take no action other than to dismiss the suit." *State ex rel. Larkin v. Oxenhandler*, 159 S.W.3d 417, 420 (Mo. App.2005).

## Subject Matter Jurisdiction

The sole issue presented in this case is whether Missouri statutes prohibit a third-party plaintiff (the Physicians) from seeking indemnification or contribution from a third-party defendant (the University) when that third-party defendant has been released by the plaintiff from the original action. Two statutes, sections 537.060 [1] and 538.230.3,[2] govern the release

---

1. All statutory references are to the Revised Statutes of Missouri, 2000, unless otherwise indicated.

2. Section 538.230 was repealed by H.B. 393, 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005), but the law did not take effect until August 28,

of liability in this case. Section 537.060 provides, in relevant part:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. *The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution* or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

(emphasis added). Section 538.230.3 provides, in relevant part:

Any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis for plaintiff's cause of action, whether actually made a party to the action or not, discharges that person or entity from all liability for contribution or indemnity....

 The legislative intent of such provisions is "to encourage settlements between tort-feasors and injured claimants— with the incentive being a settling tort-feasor can put the incident to rest and will not be subject to a later action for contribution." *See State ex rel. Sharma v. Meyers,* 803 S.W.2d 65, 67 (Mo.App.1990). These sections also reiterate the common law, which allowed a defendant to settle with the plaintiff prior to judgment for whatever the parties agreed to and the defendant was absolved of all claims for damages and contribution. *Hewlett v. Lattinville,* 967 S.W.2d 149, 152 (Mo.App. 1998). In *Hewlett,* this court determined that section 538.230 releases a defendant from liability regardless of whether the settlement was prejudgment or post judgment. *Id.* at 152–53.

In this case, the settlement agreement between the University and the plaintiffs included a release from liability for the University. Under the plain wording of both sections 537.060 and 538.230.3, the University is no longer liable for contribution to the Physicians. To allow the indemnification suit to go forward would contravene the purposes of these statutes by failing to allow a tort-feasor to "buy their peace by good faith settlement with the claimant." *Lowe v. Norfolk & W. Ry. Co.,* 753 S.W.2d 891, 892 (Mo. banc 1988).

In *Lowe,* the plaintiffs, employees of Norfolk and Western, a railway company, filed suit against the railway company and three other companies involved with the derailment, spillage, and cleanup of a toxic chemical from a railway car. *Id.* at 892–93. The suit was originally filed in Illinois. *Id.* at 893. On the courthouse steps, all of the defendants except the railway company settled. *Id.* At trial, the jury returned verdicts in favor of the plaintiffs. *Id.* On appeal, the appellate court reversed the judgment for improper forum. *Id.* Suit was refiled in the Circuit Court of the City

2005. As the effective date was after this action was filed, section 538.230 is still appli- cable for this action.

of St. Louis against the railway company. *Id.* The railway company filed *third-party claims* against the defendants who had previously settled. *Id.* After a hearing, the trial court dismissed the third-party claims, "concluding that the plaintiffs had entered into good faith settlements with the third-party defendants and that the settlements were effective to discharge these defendants from all liability." *Id.* The Missouri Supreme Court agreed. *Id.*

The Physicians seek to distinguish *Lowe* from this case on the basis that in this case the University was never formally named a defendant in the lawsuit. We fail to see how, in the light of both logic and the plain wording of the statute, that fact should make any difference. The statute speaks in terms of "liability for contribution or noncontractual indemnity to any other tort-feasor." § 537.060. The statute does not concern itself with whether an alleged tortfeaser has been formally brought into an existing lawsuit. The statute does not even require an existing lawsuit at the time of any settlement negotiation.

The Physicians also suggest that the University's interpretation of the statute is somehow unfair. The Physicians do not raise a constitutional issue; just a fairness issue. When the statutory language is clear and there is no ambiguity, any complaints about fairness are for the legislature, not the courts. The Physicians also seem to overlook the fact that, had the case against them been tried, they, as the non-settling tortfeasors, would receive the benefit of the $625,000 settlement as credit against any amount adjudged against them.[3]

Because sections 537.060 and 538.230.3 provide release of any liability for claims of non-contractual indemnity and contribu-

tion as to an alleged co-tortfeasor when an agreement is reached with the plaintiff, the respondent court lacked jurisdiction over the indemnity action and erred in refusing to dismiss the action. Prohibition is an appropriate remedy.

### Conclusion

For the foregoing reasons, the preliminary writ of prohibition is made absolute.

LOWENSTEIN and NEWTON, JJ., concur.

---

**3.** Also, under section 538.230 as it existed at the time of the settlement, the Physicians could have asked the jury to formally allocate fault to the University (although no judgment could have been entered against the University). *See* § 538.230.